UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| JAY SCHREINER, SR., Guardian Ad Litem of his minor son, Jaydee Schreiner, | ) ) ) ) | CIV. 03-5069-KES |
| Plaintiff, | ) ) ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

A trial to the court in the above entitled matter was held on May 19, 2005. At the trial, the parties submitted written proposed findings of fact and conclusions of law. Having reviewed the evidence produced at trial in addition to the arguments and submissions of the parties, the court is now prepared to rule on this matter. Judgment shall be entered in favor of the United States of America ("Defendant").

## FINDINGS OF FACT

1. This negligence action is brought against Defendant under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). Jay Schreiner, Sr., on behalf of his minor son Jaydee Schreiner, seeks to recover damages incurred as a result of an automobile accident.

2. At around 9 p.m. on August 1, 2000, Jaydee was playing hide and seek with several other children near and in the street. Trial Transcript ("TT") at 45, 47-50, 63-66.

3. About this same time, Oglala Sioux Tribe ("OST") police officers John Mousseau ("Mousseau") and Gregory Ross ("Ross") completed a prisoner drop off at the Pine Ridge Jail and proceeded south on Highway 18 towards a four-way traffic light. Exhibit 123. TT at 6, 8-9.

4. Just as the officers approached the four-way from the north preparing to turn east on Highway 18, a red vehicle approached the four-way from the east. The vehicle missed the right hand yield turn lane, proceeded into the center of the four-way against a red light, and took a right turn to head north on Highway 18, narrowly missing the officers in their police vehicle. TT at 9-10, 31.

5. As the vehicle passed close by the officers, Mousseau recognized the driver as Gregory Fayson from prior contact during the summer. TT at 7, 9-10.

6. Mousseau knew that Fayson had a girlfriend and other relatives in the East Ridge area of Pine Ridge, but was unsure as to Fayson's residence. TT at 29.

7. The officers engaged their sirens and police lights and decided to pursue Fayson. TT at 10-11, 63.

8. Mousseau had difficulty turning around the police vehicle, a 2000 Ford Exhibition, around, but eventually completed a three-way turn and began pursuing Fayson north on Highway 18. TT at 11-12.

9. Approximately 528 feet from the four-way, Mousseau saw Fayson strike a vehicle along the roadside and turn to the east (first turn). TT at 13, 15-16, 91, 104.

10. By the time the officers reached the first turn, they saw Fayson an additional 270 feet to the east negotiating another turn to the north (second turn). TT at 13, 15, 91.

11. By the time the officers reached the second turn, they saw Fayson an additional 125 feet to the north negotiating another turn to the east (third turn). TT at 15, 91.

12. Fayson struck and traversed a curb while negotiating this turn and struck two boys, including Jaydee. Fayson then continued to travel an additional 79 feet before coming to rest on the south side of the road against a pole and some trash cans. TT at 91, 98.

13. Fayson fled his vehicle. TT at 17.

14. A few seconds after Fayson went around the third turn, the officers approached the third turn and were flagged down by Jaydee's uncle, Brandon Schneider. TT at 16-17, 34, 45.

15. Mousseau parked the police vehicle near the third turn. TT at 17-18.

16. The area where Mousseau parked exhibited no skid marks or any other signs of excessive speed just prior to stopping. TT at 119-20, 125.

17.     Mousseau stayed with Jaydee and waited for medical help to arrive while Ross engaged in an unsuccessful attempt to apprehend Fayson. TT at 19-20, 34.

18.     Jaydee was eventually transported to Rapid City Regional Hospital for treatment of two broken femurs.  TT at 53, 92-93.

19.     Fayson was apprehended almost two hours later and found to have a blood alcohol level of .21.  TT at 38.

20.     Frank Martinez ("Martinez"), an accident investigator, arrived and investigated the accident scene.  TT at 88-90.

21.     Martinez estimates Fayson was traveling about 20 miles per hour when he struck Jaydee, but may have been going faster right before he struck the curb and Jaydee.  TT at 102-03, 122-23.

22.     Mousseau estimates Fayson could not have been traveling more than 30 miles per hour and that he slowed to negotiate the corners.  TT at 12.

23.     Martinez found no skid marks, which would have indicated braking, at any corner, but he did find yaw marks from the Fayson vehicle, indicating a failure to brake, at the third corner.  TT at 93-95, 98, 119-20, 125.

24.     Given the quarter mile distance involved, Mousseau's and Martinez's estimates of speed, and police log reports, the entire chase from

the four-way to the accident scene did not exceed one minute. TT at 24, 28, 35-37, 104-05, 117-19.

25. Mousseau testified that he saw no pedestrians once they turned off Highway 18 until they came upon Brandon Schneider waving them down at the third turn. TT at 35.

26. The area off Highway 18 where most of the pursuit and accident occurred is not a high traffic area.[1] TT at 7-8.

27. Even though no speed limit is posted, Mousseau typically enforces a 15 mile per hour speed limit in areas where there are some residences, as in the area of the accident scene. TT at 8.

28. No evidence was presented of a specific OST pursuit policy. TT at 23-24.

## CONCLUSIONS OF LAW

1. Under the FTCA, the United States may be held liable for "personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office

---

[1] Plaintiff attempted to indicate that the officers had a duty to be extra-vigilant at this time of the year because the accident allegedly took place during an annual gathering in the area, the Oglala Sioux Nation Fair. TT at 14-15. The court notes that Mousseau testified the traffic doesn't increase in the area until the second day of the Fair. TT at 15. The court notes that August 1, 2000, was a Tuesday. www.timeanddate.com. The Oglala Nation Fair is always the first full weekend in August or August 3-6, 2000. http://www.sdtribalrelations.com/powwow.asp. The second day of the Fair would have been Friday the 4th. The court does not believe this timing supports any heightened duty for the officers.

or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

2.  Congress has extended coverage to a civil action or proceeding involving claims resulting from the performance of functions under an Indian Self-Determination Act ("638") contract. 25 U.S.C. § 450 et. seq. Officer Mousseau admitted that his employment duties for the Oglala Sioux Tribe are performed pursuant to a 638 contract entered into with the Department of the Interior, Bureau of Indian Affairs. TT at 6.

3.  Under the FTCA, the court must apply the "law of the state in which the acts complained of occurred." Goodman v. United States, 2 F.3d 291, 292 (8th Cir. 1993) (citing 28 U.S.C. § 1346(b)). The court must, therefore, apply the law of South Dakota.

4.  Plaintiffs allege Mousseau and Ross were negligent for engaging in a high speed chase in a non-emergency situation; failing to use the least dangerous method of apprehending a known suspect with a known residence; driving at an excessive speed under the circumstances; and failing to follow proper pursuit policies. Complaint at ¶ 8. "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." Fisher Sand & Gravel Co. v. State By and Through South Dakota Dep't of Transp., 558 N.W.2d 864, 867 (S.D. 1997) (citing Lien v. McGladrey & Pullen, 509 N.W.2d

421, 423 (S.D. 1993)). Plaintiff must prove these elements by a preponderance of the evidence. See Malloy v. Commonwealth Highland Theatres, Inc., 375 N.W.2d 631, 634 (S.D. 1985).

     5.    Negligence is the breach of a legal duty. Lovell v. Oahe Electric Co-op., 382 N.W.2d 396, 398 (S.D. 1986) (citing Albers v. Ottenbacher, 116 N.W.2d 529 (S.D. 1962)). Unless a duty is imposed by a statute designed for the benefit of a class of persons which include the one claiming to be injured as the result of nonperformance of the statutory duty, the duty is one imposed by the rule of the common law requiring the exercise of ordinary care or skill not to injure another. Id. Schreiner failed to allege, in his Complaint, the violation of any statutorily imposed duties. He has claimed Mousseau and Ross failed to follow OST police department policy with regard to motor vehicle pursuits.

     6.    In the face of violations of the law, an officer must take steps to stop violations and apprehend the violators, all within rational limits. State v. Spotted Horse, 462 N.W.2d 463, 464-65 n.2, 468 (S.D. 1990) (finding 90 to 109 mile per hour chase for expired license plate tag unwarranted) (citing State v. Seidschlaw, 304 N.W.2d 102, 107-08 (S.D. 1981)) (Dunn, J., concurring specially). A high speed chase for minor traffic violations may test the limits of rationality. Seidschlaw, 304 N.W.2d at 107-08 (stating six or seven minute chase at over 100 miles per hour down busy Sioux Falls street during early morning hours for u-turn violation was at "the precipice

7

of rationality and may have even plunged . . . over that edge) (Dunn, J., concurring specially).

   7.   To classify driving an automobile recklessly "as a petty offense would be to shock the general moral sense." Parham v. Municipal Court in & for the City of Sioux Falls, 199 N.W.2d 501, 504-05 (S.D. 1972) (quoting District of Columbia v. Colts, 282 U.S. 63, 51 S. Ct. 52, 75 L. Ed. 177 (1930)).  The consequences of drunk driving preclude consideration of the offense as "minor, trivial, or petty." Id. at 505.

   8.   This case involves a negligence allegation arising from the operation of a motor vehicle.  "It is the duty of the operator of a motor vehicle to exercise reasonable or ordinary care which is defined as the degree of care and caution which an ordinarily prudent or reasonable person exercises under the same or similar circumstances." Doyen v. Lamb, 49 N.W.2d 382, 383 (S.D. 1951).  What constitutes reasonable care varies depending on the circumstances. Id.  The greater the danger, the greater the care required.  Lovell, 382 N.W.2d at 398.

   9.   Considering the facts and circumstances surrounding this case, Mousseau's initial decision to pursue the Fayson vehicle was reasonable. Mousseau testified he suspected Fayson was drinking, a reasonable suspicion considering Fayson executed a right hand turn in the wrong traffic lane through a red light, narrowly missing the officers' vehicle.  This suspicion was further confirmed once the officers witnessed Fayson strike a

car parked along the road prior to the first turn.  The officers had every reason to believe that Fayson might injure others if his vehicle was not stopped.

10. Mousseau testified that the usual speed limit enforced despite no posted speed limit in this area was 15 miles per hour.  The accident investigator testified that Fayson was going 20 miles per hour when he struck Jaydee.  Mousseau saw no pedestrians in this low traffic area until he encountered the victims and their friends.  A reasonable police officer exercising ordinary care under the same or similar circumstances, would have initially engaged in such a pursuit to prevent loss of life given the reckless manner in which Fayson was driving.

11. In addition, the extremely short time frame, less than a minute, and distance, less than a quarter mile, involved in this pursuit, combined with a lack of visible pedestrians, makes it unreasonable to expect that Mousseau and Ross could foresee the potential danger to Jaydee a few moments into a pursuit at speeds barely exceeding the enforced speed limit.

12. The officers engaged their sirens and lights to warn pedestrians and other vehicles.  The court concludes that the officers were not negligent in light of these circumstances.  Finding no negligence on the part of defendant, the court need not engage in a contributory negligence analysis, but it is significant that the victims in this case were playing in or very near the street.

13. Although Mousseau recognized Fayson and knew who his girlfriend and relatives were, Mousseau did not know where Fayson was currently living or where Fayson might be heading in the few seconds of this chase.  It was entirely reasonable for Mousseau to initially engage in the first minute of this pursuit of a reckless, suspected drunk driver despite the tragic outcome for Jaydee.  If the defendants in Seidschlaw were debatably at the precipice of an irrational pursuit, this relatively low speed and extremely brief pursuit for a suspected serious offense cannot be said to breach the duty to exercise reasonable or ordinary care in operating the police vehicle.

## CONCLUSION

While the injuries sustained by Jaydee are extremely unfortunate, this brief pursuit by the officers cannot be said to rise to the level of negligence necessary to sustain an action under the FTCA.

Dated July 18, 2005.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE